<u>NOT FOR PUBLICATION</u>                              (Docket Entry No. 24)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

```
_____  :
                                  :
TEHUTI ATUM-RA, et al.,           :
                                  :
           Plaintiffs,            :     Civil No. 04-2711 (RBK)
                                  :
        v.                        :     OPINION
                                  :
ALFARO ORTIZ, Superintendent,     :
Riverfront State Prison,          :
                                  :
           Defendant.             :
_____  :
```

**KUGLER**, United States District Judge:

This matter comes before the Court on motion by Defendant Alfaro Ortiz ("Defendant"), Superintendent, Riverfront State Prison, to dismiss the claims of Plaintiffs Turham Ways, Sanfuldeen Muslim, Bomani Africa, and Antonio Pagan ("Plaintiffs"), or, in the alternative, for summary judgment. For the reasons set forth below, Defendant's motion shall be granted.

I.   **Background**

The above-captioned complaint, received by the Clerk of Court on June 10, 2004, named as Plaintiffs nine inmates incarcerated at Riverfront State Prison in Camden, New Jersey. Plaintiffs alleged that prison officials deliberately discriminated against them on the basis of their race and religion by moving them from their accommodations in Trailer Unit

E to the more restrictive Cluster Units.[1]

This Court issued an Order on July 1, 2004, requiring Plaintiffs to submit an application to proceed in forma pauperis ("IFP") or the requisite filing fee within sixty days. Four of the nine Plaintiffs, Turham Ways ("Ways"), Sanfuldeen Muslim ("Muslim"), Bomani Africa ("Africa"), and Antonio Pagan ("Pagan"), submitted the requisite IFP forms, and this Court granted their request to proceed without prepayment of fees on September 23, 2004. The remaining five Plaintiffs were dismissed without prejudice.

Prior to filing suit, Plaintiffs Africa and Muslim filed Inmate Request Forms, requesting an explanation for their move from the trailer units. They were told that they qualified as "escape risks" and were therefore precluded from living in the trailer units, pursuant to prison policy. Plaintiffs allege in their Complaint that this rationale was mere pretext, since, according to Plaintiffs, seventeen unspecified white inmates with escape histories were permitted to remain in the trailers.

Defendant now moves for dismissal, or summary judgment in the alternative, on the grounds that Plaintiffs failed to exhaust their administrative remedies. Plaintiffs have not opposed Defendant's motion.

---

[1] The record indicates that Plaintiff Ways was at no time housed in a Trailer Unit. (Def. Mot. at 7.)

2

## II.  Standard

A motion to dismiss a Title VII claim for failure to exhaust administrative remedies is treated as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Robinson v. Dalton, 107 F.3d 1018, 1022 (3d Cir. 1997). However, once the parties go "beyond the face of the pleadings" to establish whether the administrative remedies have been exhausted, courts should treat the issue "in a manner consistent with Rule 56 for summary judgment." Id.

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could find for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. Celotex, 477 U.S. at 330. The moving party may satisfy this burden by either (1) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case. Id.

at 331.

Once the moving party satisfies this initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Serbin, 96 F.3d at 69 n.2 (quoting Celotex, 477 U.S. at 322); Heffron v. Adamar of New Jersey, Inc., 270 F. Supp. 2d 562, 568-69 (D.N.J. 2003). "If the non-movant's evidence on any essential element of the claims asserted is merely 'colorable' or is 'not significantly probative,' the court must enter summary judgment in favor of the moving party." Heffron, 270 F. Supp. 2d at 69 (citing Anderson, 477 U.S. at 249-50).

Lastly, although Plaintiffs have not opposed Defendant's motion, a district court may not grant a motion for summary judgment without examining the merits, solely on the basis that it is unopposed. Stackhouse v. Mazurkiewicz, 951 F.2d 29, 30 (3d Cir. 1991) (citing Anchorage Assoc. v. Virgin Islands Bd. of Tax Rev., 922 F.2d 168 (3d Cir. 1990)).

4

## III. Analysis

Defendant contends that Plaintiffs failed to exhaust the required administrative remedies as set forth in the prison handbook.[2] Under the Prison Litigation Reform Act of 1995 ("PLRA"), codified as 42 U.S.C. § 1997e, prisoners are precluded from contesting prison conditions in federal court until exhausting "all avenues of relief available to them within their prison's inmate grievance system." Spruill v. Gillis, 372 F.3d 218, 227 (3d Cir. 2004) (holding that the failure to "properly" exhaust administrative remedies under the PLRA constitutes a procedural default).[3]

The purpose of the exhaustion requirement is "(1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and

---

[2] Defendant also argues that all evidence indicates that Plaintiffs' transfer was attributable to their status as inmates with escape histories and that there is no evidence of any discrimination on the grounds of race or religion. (See John Poinsett Cert. ¶ 4; Norma Williams Cert. ¶ 11.) All records indicate that there were no white inmates with escape histories housed in E-Unit, despite Plaintiffs' allegations to the contrary. (See Poinsett Cert. Ex. A.) However, because the Court now finds that this suit must be dismissed because Plaintiffs have not exhausted their administrative remedies, it will not reach the merits of Defendant's other arguments.

[3] Specifically, section 803(d) of the PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits." Spruill, 372 F.3d at 230.

Consequently, "PLRA's mandatory exhaustion requirement applies to all federal claims brought by any inmate," including claims related to specific incidents and claims of ongoing conditions. Porter v. Nussle, 534 U.S. 516, 520, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."). Claims requiring exhaustion include allegations of discrimination, Jones v. Maher, 131 Fed. Appx. 813, 815 (3d Cir. 2005), and challenges to housing assignments. Kuykendall v. Texas Dept. of Criminal Justice Executive Dir., 78 Fed. Appx. 928, 929 (5th Cir. 2003) (holding that inmate's "assertions regarding his improper housing assignment involve prison life and were within the control of prison officials, so exhaustion was required").

Moreover, all available administrative remedies must be pursued, even if they are not "plain, speedy, and effective," do "not meet federal standards," or could not result in the relief requested in the suit. Nussle, 534 U.S. at 524. Available remedies include grievance procedures set forth in an inmate handbook, even if not formally adopted by any state

administrative agency. <u>Concepcion v. Morton</u>, 306 F.3d 1347, 1348, 1349 (3d Cir. 2002). Failure to exhaust such remedies mandates dismissal of the inmate's claim. <u>Booth v. Churner</u>, 532 U.S. 731, 739 (2001); <u>Ahmed v. Sromovski</u>, 103 F. Supp.2d 838, 843 (E.D.Pa. 2000); <u>Wilkins v. Bittenbender</u>, Slip Copy, 2006 WL 860140 (M.D. Pa. 2006).

In this instance, the Riverfront State Prison Inmate Handbook ("Handbook") establishes a formalized grievance procedure utilizing an Inmate Request Tracking System to "give the inmate population a way to bring complaints, problems, suggestions, etc., to the attention of the Administration." (Williams Cert. ¶ 12; <u>see also</u> Handbook, Williams Cert., Ex. B.) Pursuant to the Handbook, inmates are instructed to complete Inmate Request Forms and Administrative Remedy Forms and drop the forms in labeled mailboxes in their housing units. Where an inmate is dissatisfied with the response to the initial grievance, the procedures require him to file an Administrative Remedy Form. (Williams Cert. ¶ 13.)

All evidence in the record indicates that the sole grievances administratively presented by Plaintiffs were Inmate Request Forms filed individually by Africa and Muslim on November 21, 2003, and November 25, 2003,[4] respectively. (Williams Cert. ¶

---

[4] Muslim's Request Form states that he initially sent a request form on November 4, 2003; however, the records do not
(continued...)

14; see also Inmate Request Forms, Williams Cert. Ex. C.) On these forms, Plaintiffs Africa and Muslim ask only for an explanation of why they had been moved from the trailer units. They do not mention race or religion, nor do they present any allegations of discrimination.[5] (Inmate Request Forms, Williams Cert. Ex. C.) Neither Africa nor Muslim followed up on these initial inquiries with Administrative Remedy Forms. Nor is there any evidence that Plaintiffs otherwise pursued their complaints through any other authorized administrative means. No evidence in the record suggests that Plaintiffs Pagan and Ways filed any forms or otherwise contested their housing transfer.

Because inmates cannot exhaust their administrative remedies with regards to discrimination claims unless they first raise the issue of discrimination in the administrative forum, Plaintiffs' claims of discrimination against Defendant must be dismissed. See, e.g., Logue v. Chatham County Detention Ctr., 152 Fed. Appx. 781, 783 (11th Cir. 2005) ("The first time Logue ever mentioned

---

[4](...continued)
contain that initial form. (Williams Cert. Ex. C.) Even if Muslim did indeed file two Inmate Request Forms, there is no evidence demonstrating that he raised the issue of race or religious discrimination on either form.

[5] In their Complaint, Plaintiffs allege that they pursued administrative relief by "sending inmate request, file inmate remedy form, written and had meeting with the Administrator." (Compl. at 3.) However, there is no evidence of such a meeting, nor is there any evidence that Plaintiffs presented any allegations of race or religious discrimination prior to filing suit in this Court.

race discrimination was when he filed his complaint in the district court . . . on this record, we are satisfied that Logue did not exhaust his equal-protection claim where he did not refer to race prior to filing his complaint.").

Accordingly, the above-captioned case will be dismissed for failure to exhaust administrative remedies pursuant to the PLRA. The accompanying Order shall enter today.


Dated:  6/14/06                    s/Robert B. Kugler
                                ROBERT B. KUGLER
                                United States District Judge